UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE PAPPAS, individually and as the representative of a class of similarly-situated persons,<br><br>          Plaintiff,<br><br>          v.<br><br>MYPIZZA TECHNOLOGIES, INC., a Delaware corporation,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No.<br>)<br>) **CLASS ACTION**<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT

Plaintiff, GEORGE PAPPAS ("Plaintiff"), through his attorneys, brings this action on behalf of himself and all others similarly situated, and alleges the following against Defendant, MYPIZZA TECHNOLOGIES, INC. ("Defendant" or "Slice"):

## PRELIMINARY STATEMENT

1. This case challenges Defendant's practice of sending unsolicited automated text messages to the cellular telephones of Plaintiff and Class members, including text messages to consumers registered on the National Do Not Call registry, in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("JFPA"), and the regulations promulgated thereunder by the Federal Communications Commission ("FCC").

2. Over a six-month period, Defendant sent at least three unauthorized text messages (the "Texts") to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS" or "auto-dialers") for the purpose of soliciting business from Plaintiff.

3.       The TCPA regulates, among other things, the use of auto-dialers.  Specifically, the TCPA prohibits the use of auto-dialers to make <u>any</u> call to a cellular telephone number in the absence of an emergency or the prior express consent of the person being called.  47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

4.       The TCPA defines ATDS as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C§ 227 (a)(1).

5.       The FCC is empowered to issue rules and regulations implementing the TCPA. The FCC has clarified that text messages qualify as "calls" under the TCPA, affirming that:

> under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number.  Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular service, or any service for which the party is charged."  **This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order ("*2003 Order*"), 18 FCC Rcd. 14014, 14115 (July 3, 2003) (emphasis added); *see Gager v. Dell Fin. Servs., LLC,* 727 F.3d 265, 269 n.2 (3rd Cir. 2013).

6.       The FCC has further clarified that, except for calls made by tax-exempt nonprofit organizations or health care messages, any telephone call using an automatic telephone dialing system that includes or introduces an advertisement or constitutes telemarketing must have prior express <u>written</u> consent as provided at 47 C.F.R. § 64.1200(f)(8) to be compliant with the TCPA. 47 C.F.R. § 64.1200(a)(2). (emphasis added).  The FCC defines "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).

7. The FCC has found that automated or prerecorded calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they can pay in advance or after the minutes are used. *2003 Order*, 18 FCC Rcd. 14014, 14115.

8. The TCPA also prohibits telemarketers from making telephone solicitations to persons who have listed their telephone numbers on the National Do Not Call Registry, a database established by the FCC in 2003 to allow consumers to exclude themselves from telemarketing calls unless they consent to receive the calls in a signed, written consent.

9. Consumers who do not want to receive telemarketing calls may indicate their preference by registering their telephone numbers on the National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2). TCPA regulation 47 C.F.R. § 64.1200(c) provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

10. These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. *Id.*

11. Because a telephone subscriber listed on the Registry must take an affirmative step to register his or her number, a telemarketer who wishes to call a person listed on the Registry must take a similarly affirmative step, and must obtain the registrant's signed, written agreement to be contacted by the telemarketer. Id. § 64.1200(c)(2)(ii). The written agreement must also include the telephone number to which the calls may be placed. *Id.*

12. A person whose number is on the Registry and has received more than one telephone solicitation within any twelve-month period by or on behalf of the same entity in

violation of the TCPA, can sue the violator and seek the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5).

13. Plaintiff, on behalf of himself and all others similarly situated, brings this case as a class action asserting claims against Defendant under the TCPA.

14. Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because the unsolicited automated text messages at issue were and are being sent in the same or similar manner. This action is based on the same legal theory, namely liability under the TCPA.

15. This action seeks relief expressly authorized by the TCPA: (a) injunctive relief enjoining Defendant from sending unsolicited automated text messages without prior express consent; (b) injunctive relief enjoining Defendant from sending unsolicited automated text messages that includes or introduces an advertisement or constitutes telemarketing without prior express written consent; and (c) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and, in the event of finding a willful or knowing violation, to have such damages trebled, as provided by § 227(b)(3) of the Act.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant has its principal place of business in this district.

## PARTIES

18. Plaintiff is, and at all times mentioned herein was, a citizen and resident of Illinois. Plaintiff is the owner of a sports bar and grill (Pap's Café, Inc.), located in Mount Prospect, Illinois.

19. Defendant, MyPizza Technologies, Inc., also known as Slice, is a company headquartered in New York, New York.

20. Defendant provides online and mobile pizza ordering software and is the creator and owner of the app, Slice. Slice allows users to connect with local pizzerias and place orders for pickup or delivery. On information and belief, Defendant solicits independent pizzerias to participate in the app and sell their items and other items suggested by Defendant to users of the app. Slice allows users of the app to save money through its exclusive deals and charges pizzerias less for the services it provides.[1]

## FACTS

21. On or about February 12, 2020, Plaintiff received a text message on his personal cellular telephone suggesting that he should add Valentine's Day Specials, like heart shaped pizzas, to his menu and requested Plaintiff to email Defendant. A screenshot of the February 12 text is attached hereto as Exhibit A at 1.

22. On or about March 4, 2020, Plaintiff received a second text message from Defendant on the same cellular telephone stating that it has a "March Madness" deal for his shop. The text stated that Plaintiff could add this item to its menu by replying "yes" and further stated that while Defendant would not be covering the costs of the deal, it would heavily promote it. A screenshot of the March 4 text is attached hereto as Exhibit A at 1.

23. On or about June 30, 2020, Plaintiff received a third text from Defendant on the same cellular telephone regarding Defendant's new "Camp Slice" summer promotion. In the text, Defendant requested Plaintiff to add the "Camp Slice" deal to his menu by July 3 and to "check

---

[1] Information obtained from Defendant's website, www.slicelife.com, last visited July 7, 2020.

them out" at Defendant's website. A screenshot of the June 30 text is attached hereto as Exhibit A at 2.

24. Each text message is similar in nature in that they provide promotional content for Defendant's products and were sent with the goal of enticing Plaintiff to participate in its Slice app, and thereby increase Defendant's profits.

25. Each text is impersonal in nature and the message in each utilizes boilerplate language. Thus, on information and belief, the Texts were sent to recipients *en masse*.

26. Each text was sent from Defendant's telephone number, (646) 542-1877. When dialed, an automated messaging service answers instructing the caller to select among various options. In order to speak to a live person, the dialer must enter a number on his phone.

27. Based on the foregoing, no human directed the text messages to Plaintiff's cellular number; rather, Plaintiff's number was called using a random or sequential number generator with the capacity to store or produce those numbers. In other words, on information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, the Texts to Plaintiff's cellular telephone using an automatic telephone dialing system as defined by 47 U.S.C. § 227(b)(1)(A) and the FCC.

28. Plaintiff never provided his cellular telephone number to Defendant.

29. Plaintiff registered his cellular telephone number with the National Do Not Call Registry on May 8, 2009 and never revoked his registration. Plaintiff's cellular telephone is for personal use.

30. Plaintiff never requested, desired, permitted, or otherwise provided his prior express consent to Defendant to send or transmit the Texts or any other texts to his cellular telephone.

31. Plaintiff never provided his prior express written consent to Defendant to send or transmit the Texts or any other advertisement or telemarketing to his cellular telephone.

32. As a result of receiving the Texts, Plaintiff incurred expenses to his wireless service, wasted data storage capacity, suffered the nuisance, waste of time, and aggravation that accompanies receipt of such unauthorized advertisements, and was subjected to an intrusion upon his seclusion and invasion of privacy.

33. On information and belief, Defendant sent the Texts, or substantially similar text messages, *en masse* to a list of thousands of randomly generated cellular telephone numbers using an ATDS.

34. On information and belief, Defendant sent the Texts, or substantially similar text messages, to Plaintiff and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers without human intervention.

35. On information and belief, Defendant sent the Texts, or substantially similar text messages to Plaintiff and Class members that had their telephone numbers registered in the National Do not Call Registry.

36. On information and belief, Plaintiff and the Class members did not provide Defendant with prior express written consent to receive such text messages and, as a result, incurred expenses to their wireless services, wasted data storage capacity, suffered the aggravation that accompanies receipt of such unauthorized advertisements, and were subjected to an intrusion upon seclusion.

## CLASS ACTION ALLEGATIONS

37. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this class action on behalf of the following Classes:

### Autodialed Class

All individuals in the United States who, within the four years prior to the filing of the instant Complaint, received the same or a substantially similar text as detailed in Exhibits A-C to their cellular telephones from Defendant through the use of an automatic dialing system and who did not provide prior express consent and/or prior express written consent to receive such text messages.

### Do Not Call Registry ("DNC") Class

All persons whose telephone numbers were listed on the Do Not Call Registry, and to whom, during the four years prior to the filing of this Complaint, more than one call within any twelve-month period was placed by or at the direction of Defendant to promote the sale of Defendant's services.

Excluded from the Classes are the Defendant and its officers, directors, employees, and agents and members of the Judiciary. Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

38. <u>Class Size (Fed. R. Civ. P. 23(a)(1))</u>: Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Classes is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of Class members is at least forty (40) based on Defendant's use of automated and impersonal text message content sent via a telephone number with an automated message center.

39. <u>Commonality (Fed. R. Civ. P. 23 (a)(2))</u>: Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

8

  a. Whether Defendant sent non-emergency text messages to Plaintiff and the Class members' cellular telephones using an automatic telephone dialing system;

  b. Whether Defendant had prior express written consent to send its automated text messages;

  c. Whether Defendant systematically sent multiple text messages to Plaintiff and consumers whose phone numbers were registered in the National Do Not Call Registry;

  d. Whether Defendant's conduct was knowing and/or willful;

  e. Whether Defendant is liable for damages, and the amount of such damages; and;

  f. Whether Defendant should be enjoined from such conduct in the future.

40. <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>:  Plaintiff's claims are typical of the claims of all Class members. Plaintiff received the same or substantially similar unsolicited text messages as the other Class members sent by or on behalf of Defendant advertising the availability or quality of goods and services of the Defendant during the Class Period. Plaintiff is making the same claims and seeking the same relief for himself and all Class members based upon the same federal statute. Defendant has acted in the same or in a similar manner with respect to the Plaintiff and all the Class members by sending Plaintiff and each member of the Class the same or substantially similar text message.

41. <u>Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))</u>:  Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class.

42. <u>Predominance and Superiority (Fed. R. Civ. P. 23(b)(3))</u>: Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

    a. Proof of Plaintiff's claims will also prove the claims of the Class without the need for separate or individualized proceedings;

    b. Evidence regarding defenses or any exceptions to liability that Defendant may assert and attempt to prove will come from Defendant's records and will not require individualized or separate inquiries or proceedings;

    c. Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to Plaintiff and all Class members;

    d. The amount likely to be recovered by individual Class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

    e. This case is inherently manageable as a class action in that:

        i. Defendant identified persons or entities to receive the unauthorized text messages and Defendant's computer and business records will likely enable Plaintiff to readily identify class members and establish liability and damages;

        ii. Liability and damages can be established for Plaintiff and the Class with the same common proofs;

        iii. Statutory damages are provided for in the statute and are the same for Plaintiff and all Class members and can be calculated in the same or a similar manner;

      iv.    A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort, and expense;

      v.    A class action will contribute to uniformity of decisions concerning Defendant's practices; and

      vi.    As a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

## COUNT I

### Violation of the TCPA, 47 U.S.C. § 227(b)(3)

43. Plaintiff incorporates by reference paragraphs 1-42 as if fully set forth herein.

44. The Texts Defendant sent Plaintiff and the Class members are advertisements as defined by 47 C.F.R. § 64.1200(f)(1) because they promote Defendant's property, goods, or services.

45. Defendant and/or its agent sent the Texts, or substantially similar unsolicited automated text messages to the cellular telephone numbers of Plaintiff and the Class members *en masse* without their prior express consent and prior express written consent.

46. Defendant sent the Texts, or had them sent on its behalf, using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

47. Defendant utilized equipment that sent the text messages, including the Texts, to Plaintiff and other Class members simultaneously and without human intervention.

48. By sending the unsolicited text messages to Plaintiff and the Class, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

49.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class are also entitled to an injunction against future calls by or on behalf of Defendant.

## COUNT II

### Willful and/or Knowing Violation of the TCPA, 47 U.S.C. § 227(b)(3)

50.     Plaintiff incorporates by reference paragraphs 1-42 as if fully set forth herein.

51.     The Texts Defendant sent Plaintiff and the Class members are advertisements as defined by 47 C.F.R. § 64.1200(f)(1) because they promote Defendant's property, goods, or services.

52.     Defendant and/or its agent sent the Texts, or substantially similar unsolicited automated text messages to the cellular telephone number of Plaintiff and the Class members *en masse* without their prior express consent and prior express written consent.

53.     Defendant sent the Texts, or had them sent on its behalf, knowingly using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

54.     Defendant knowingly utilized equipment that sent the text messages, including the Texts, to Plaintiff and the Class members simultaneously and without human intervention.

55.     Defendant knew that it did not have prior express consent or prior express written consent to send the Texts to Plaintiff and the Class members.

56.     On information and belief, Defendant knew, or willfully ignored the fact, that its conduct as alleged herein violated the TCPA.

57. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the Class members were harmed and entitled to statutory relief.

58. As a result of Defendant knowing that Plaintiff and the Class had not given prior express consent to receive the text messages, the Court should treble the amount of statutory damages available to Plaintiff and the Class.

## COUNT III

### Violation of the TCPA, 47 U.S.C. § 227(c)
### (Do Not Call Registry)

59. Plaintiff incorporates by reference paragraphs 1-42 as if fully set forth herein.

60. On information and belief, Defendant violated 47 C.F.R. § 64.1200(c) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers who had registered their telephone numbers in the National Do Not Call Registry, such as Plaintiff and the DNC Class, without instituting procedures that comply with the regulatory minimum standards as described in 47 C.F.R. § 64.1200(c)(2)(i).

61. On information and belief, Defendant never obtained prior express written permission to send Plaintiff or the DNC class members the Texts, or substantially similar text messages.

62. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the DNC Class members received more than one telephone call in a 12-month period made by or on behalf of Defendant. As a result of Defendants' conduct as alleged herein, Plaintiff and the DNC Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia,* to receive up to $500 in damages for such violations.

63. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

WHEREFORE, Plaintiff, GEORGE PAPPAS, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendant, MYPIZZA TECHNOLOGIES, INC., as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the Class, and appoint the Plaintiff's counsel as counsel for the Class;

B. That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, and award treble damages if the violations were done willfully and/or knowingly;

C. That the Court award prejudgment interest from the date the texts were sent to the date the Court enters judgment;

D. That the Court enjoin the Defendant from additional violations; and

E. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper

Respectfully submitted,

GEORGE PAPPAS, individually and as the representative of a class of similarly-situated persons,

By: /s/ Aytan Y. Bellin
Aytan Y. Bellin

BELLIN & ASSOCIATES LLC
50 Main Street, Suite 1000
White Plains, NY 10606
Telephone: (914) 358-5345
Facsimile: (212) 571-0284
Aytan.Bellin@bellinlaw.com

And

Ryan M. Kelly (*pro hac vice to be submitted*)
**ANDERSON + WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Facsimile:  847-368-1501
rkelly@andersonwanca.com