UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
GEORGE PAPPAS, individually and as the representative of a class of similarly situated persons,

                Plaintiff,

   v.

MYPIZZA TECHNOLOGIES, INC., a Delaware corporation,

                Defendant.
------------------------------------------------------------ X

Case No. 1:20-cv-05680-VEC

**<u>ORAL ARGUMENT REQUESTED</u>**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO STAY PENDING
*FACEBOOK, INC. v. DUGUID* RULING**

Philip A. Goldstein
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Telephone: (212) 548-2167
*pagoldstein@mcguirewoods.com*

Susan E. Groh (*pro hac vice*)
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
Telephone: (312) 849-8184
*sgroh@mcguirewoods.com*

Tammy L. Adkins (*pro hac vice*)
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818
Telephone: (312) 750-5727
*tadkins@mcguirewoods.com*

*Counsel for Defendant MyPizza Technologies, Inc.*

**TABLE OF CONTENTS**

Page

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 4

    I.     The Disputed Issue of What Constitutes an ATDS Has Created a Circuit Split Following *ACA International* ........................................................................ 4

    II.    The Supreme Court Will Soon Resolve The Circuit Split Regarding What Constitutes an ATDS ................................................................................................ 5

    III.   A Stay is Warranted Here Pending the Decision in *Facebook, Inc. v. Duguid* ....................................................................................................................... 7

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA International v. Federal Communications Commission*,
  885 F.3d 687 (D.C. Cir. 2018) ................................................................................................1, 4, 8

*Air Line Pilots Ass'n v. Miller*,
  523 U.S. 866 (1998) ..................................................................................................................7

*Aleisa v. Square, Inc.*,
  No. 20-CV-00806, 2020 WL 5993226 (N.D. Cal. Oct. 9, 2020) ..............................................9

*Allan v. Pennsylvania Higher Educ. Assistance Agency*,
  968 F.3d 567 (6th Cir. 2020) .....................................................................................................5

*Barr v. American Ass'n of Political Consultants, Inc.*,
  140 S. Ct. 2335 (2020) ...............................................................................................................6

*Campbell v. Synchrony Bank*,
  No. 1:17-CV-080, 2017 WL 11285843 (N.D.N.Y. Aug. 11, 2017) ..........................................8

*Clinton v. Jones*,
  520 U.S. 681 (1997) ..................................................................................................................7

*Creasy v. Charter Commc'ns, Inc.*,
  No. 20-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020) ......................................................8

*DiMarco v. Nationstar Mortg., LLC*,
  No. 16-CV-6588, 2017 WL 1855197 (W.D.N.Y. May 5, 2017) ...............................................8

*Dominguez on Behalf of Himself v. Yahoo, Inc.*,
  894 F.3d 116 (3d Cir. 2018) ......................................................................................................4

*Duguid v. Facebook*,
  926 F.3d 1146 (9th Cir. 2019) ...................................................................................................5

*Duran v La Boom Disco, Inc.*,
  955 F.3d 279 (2d Cir. 2020) ..............................................................................................4, 6, 7

*Facebook, Inc. v. Duguid*,
  No. 19-511 (cert. granted July 9, 2020) ........................................................................... *passim*

*Gadelhak v. AT&T Servs.*,
  950 F.3d 458 (7th Cir. 2020) .....................................................................................................4

*Glasser v. Hilton Grand Vacations Co.*,
    948 F.3d 1301 (11th Cir. 2020) ...................................................................................4

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)......................................................................................................7

*Loftus v. Signpost Inc.*,
    No. 19-CV-7984, 2020 WL 2848231 (S.D.N.Y. June 2, 2020) ............................7, 8

*Marks v. Crunch San Diego, LLC*,
    904 F.3d 1041 (9th Cir. 2018) ....................................................................................5

*McGregory v. 21st Century Ins. & Fin. Serv., Inc.*,
    No. 1:15-CV-00098, 2016 WL 11643678 (N.D. Miss. Feb. 2, 2016).......................5

*In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*,
    No. 11-MD-02295, 2020 WL 5223545 (S.D. Cal. July 27, 2020) ............................8

*Reynolds v. Time Warner Cable, Inc.*,
    No. 16-CV-6165, 2017 WL 362025 (W.D.N.Y. Jan. 25, 2017)................................8

*Veytia v. Portfolio Recovery Assocs., LCC*,
    No. 20-CV-0341, 2020 WL 5257881 (S.D. Cal. Sept. 3, 2020)................................8

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et. seq.* ............................................. *passim*

Plaintiff George Pappas's Telephone Consumer Protection Act ("TCPA") claim hinges on whether Defendant MyPizza Technologies, Inc. ("Defendant" or "Slice") used an automatic telephone dialing system ("ATDS") to send the text messages at issue in this putative class action. That determination, in turn, hinges on what constitutes an ATDS. Because the United States Supreme Court is currently addressing this critical issue, Slice moves to stay the proceedings pending the Supreme Court's decision in *Facebook, Inc. v. Duguid*, No. 19-511 (cert. granted July 9, 2020). The Supreme Court will hear arguments on the issue on December 8, 2020.

Plaintiff alleges that Slice sent Plaintiff text messages using an ATDS in violation of the TCPA, 47 U.S.C. § 227. *See* First Amended Complaint, Dkt. 28 ("FAC"), ¶¶ 22, 29.[1] The TCPA prohibits the use of an ATDS to send text messages to cell phones without consent. 47 U.S.C. § 227(b)(1)(A)(iii). Thus, to prevail on his claims, Plaintiff must prove that Slice used an ATDS to send the text messages at issue. The TCPA defines ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The interpretation of that statutory definition, however, has been a hotly contested issue in the wake of the D.C. Circuit's decision in *ACA International v. Federal Communications Commission*, 885 F.3d 687 (D.C. Cir. 2018)[2], leading to a circuit split on the issue.

The Third, Seventh, and Eleventh Circuits have ruled that the TCPA means what it says: to constitute an ATDS, equipment must employ a "random or sequential number generator." The Second, Sixth, and Ninth Circuits have ruled that equipment must only be able to dial numbers

---

[1] A copy of the First Amended Complaint is attached to the Goldstein Declaration as Exhibit A.
[2] In *ACA International*, the D.C. Circuit vacated the Federal Communication Commission's ("FCC") interpretations of what constitutes an ATDS as arbitrary, capricious, and overbroad. *Id.* at 702.

from a pre-existing list, regardless of how those numbers were generated. The Supreme Court in *Facebook* agreed to resolve this circuit split and determine what type of equipment constitutes an ATDS. Specifically, the Supreme Court will address whether "the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not use a random or sequential number generator." *See* Question Presented Report, *Duguid v. Facebook*, No. 19-511.

If the Supreme Court determines that equipment must employ a random or sequential number generator to constitute an ATDS, then Plaintiff's case against Slice will end because the system used to send the text messages at issue did not employ a random or sequential number generator. Even if the Supreme Court rules differently, the decision will still directly impact Plaintiff's claims and provide significant guidance and clarity which will allow the parties to streamline discovery and facilitate settlement discussions. Thus, Slice respectfully requests that this Court stay this action to avoid the significant cost and expense of continued litigation.

## BACKGROUND

On October 2, 2020, Plaintiff filed an amended complaint alleging that Slice violated the TCPA by sending him text messages using an ATDS.[3]  *See* FAC ¶¶ 22, 29.  Specifically, Plaintiff contends that Slice sent texts using a "random or sequential number generator with the capacity to store or produce those numbers." *Id.* ¶ 22.  Here, however, the system used to send text messages to Plaintiff did not employ a random or sequential number generator, and therefore, did not qualify as an ATDS.  *See* Defendant's Answer and Affirmative Defenses to Plaintiff's First Amended

---

[3] Plaintiff originally asserted a claim relating to the TCPA's Do Not Call ("DNC") Registry Restrictions in Count III.  Plaintiff amended the Complaint on October 2, 2020 to eliminate Count III.  *See* Dkt. 28.

Complaint, Dkt. 32 ¶¶ 22, 28, 40, 47 (denying Plaintiff's allegation that the texts were sent using equipment that had the capacity to randomly or sequentially generate numbers).

Indeed, the amended complaint makes clear that Slice did not send the text messages at issue from a system that employs a "random or sequential number generator." Rather, the amended complaint establishes that Slice sent the text messages directly to Plaintiff as part of an ongoing established business relationship between Slice and Plaintiff. *See* FAC ¶¶ 16–19 (describing three text messages allegedly sent by Slice identifying various pizza sales promotions Plaintiff might choose to participate in as part of its relationship with Slice). As set forth in the Answer, Defendant provides an online and mobile pizza ordering software for local pizzerias called "Slice." *See* Answer ¶ 15. Local pizzerias sign up for Slice, which allows their customers to place orders through Slice via an application on the customer's telephone or device. *Id.* ¶¶ 16–19.

Plaintiff, the owner of a local pizzeria called Pap's Ultimate Bar and Grill ("Pap's"), signed up for Slice's service, and provided his cell phone number to Slice. *Id*. By signing up, Plaintiff elected to have Pap's listed on the app to allow Slice to accept orders on behalf of Pap's.[4] *Id.* In connection with that business relationship, Slice sent text messages to Plaintiff to inform Plaintiff of certain menu offerings Plaintiff may consider including on Pap's menu to increase orders to Plaintiff's shop via the app. *Id.* The nature of the relationship between Slice and Plaintiff makes clear that Slice sent text messages to Plaintiff pursuant to their established business relationship and did not send the text messages using equipment that had the capacity to randomly or sequentially generate numbers. Thus, the central issue in this case—i.e., whether Slice sent the text

---

[4] This pre-existing business relationship led Plaintiff to dismiss Count III of its original complaint. *See* Dkt. 28.

messages using equipment capable of randomly or sequentially generating numbers—is squarely before the Supreme Court in *Facebook*.

## ARGUMENT

I. **The Disputed Issue of What Constitutes an ATDS Has Created a Circuit Split Following *ACA International*.**

The TCPA, in part, prohibits calls and text messages sent to cell phones using an ATDS without proper consent.  47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  While the FCC purportedly interpreted this statutory definition in various orders, the D.C. Circuit vacated the FCC's interpretations of what constitutes an ATDS as arbitrary, capricious, and overbroad.  *ACA Int'l*, 885 F.3d at 701–02.  In the wake of that decision, the circuit courts were left to interpret the statutory definition, resulting in a circuit split.

Today, the Third, Seventh, and Eleventh Circuits have held that to constitute an ATDS, equipment must employ random or sequential number generation.  *See, e.g.*, *Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (requiring that a calling system "function[ ] as an autodialer by randomly or sequentially generating telephone numbers, and dialing those numbers."); *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 460 (7th Cir. 2020) ("the phrase 'using a random or sequential number generator' describes how the telephone numbers must be 'stored' or 'produced'"); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301 (11th Cir. 2020) (adopting the same reading).

On the other hand, the Second, Sixth, and Ninth Circuits held that equipment that can automatically dial numbers from a list meets the definition of an ATDS, regardless of whether those numbers were produced with a random or sequential number generator.  *See, e.g.*, *Duran v*

4

*La Boom Disco, Inc.*, 955 F.3d 279 (2d Cir. 2020) (finding that an ATDS "may call numbers from stored lists, such as those generated, initially, by humans"); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) (holding that "the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically"); *Allan v. Pennsylvania Higher Educ. Assistance Agency*, 968 F.3d 567 (6th Cir. 2020) (adopting the *Marks* interpretation).

Thus, the Supreme Court will resolve the circuit split and determine whether equipment must employ a random or sequential number generator to constitute an ATDS as set forth in the statutory definition.

**II.     The Supreme Court Will Soon Resolve The Circuit Split Regarding What Constitutes an ATDS.**

On July 9, 2020, the Supreme Court granted certiorari arising in *Duguid v. Facebook*, 926 F.3d 1146, 1151 (9th Cir. 2019), which will resolve the circuit split and decide "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *See* Question Presented Report, *Duguid v. Facebook*, No. 19-511.  The case will be argued on December 8, 2020, and with a decision expected by the end of June 2021.  *See McGregory v. 21st Century Ins. & Fin. Serv., Inc.*, No. 1:15-CV-00098, 2016 WL 11643678, at *3 (N.D. Miss. Feb. 2, 2016) (the Court's custom is to "issue all decisions in argued cases before the start of its summer recess in June.").

Opening briefs in the Supreme Court case were filed on September 4, 2020, both by Petitioner Facebook, Inc., and by the Solicitor General of the United States on behalf of the United

States as Respondent Supporting Petitioner.[5] Both briefs put forth compelling linguistic analyses of the language of the ATDS definition and the explanation of why, in contrast with the Second Circuit's holding in *Duran*, which is binding in this case, it is only intended to apply to equipment that employs a random or sequential number generator, not just any equipment that has the capacity to dial numbers from a list without regard to how those numbers are generated.

For example, the United States analyzed the definition of ATDS —i.e., "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers"—and adopted the narrow interpretation of the statute, consistent with the rulings of the Third, Seventh and Eleventh Circuits:

> Various features of that language indicate that the participial phrase "using a random or sequential number generator" modifies both of the verbs "store" and "produce." When a modifying phrase appears at the end of a list, the phrase typically modifies each item within the list rather than only the last item. The fact that the phrase "using a random or sequential number generator" is set off by a comma reinforces that inference. And the interposition of the phrase "telephone numbers to be called" between the verbs and the modifying phrase confirms that reading, since that phrase is the direct object of both "store" and "produce," and it would be odd to construe the modifying phrase to reach back over that shared object to modify only one of the two verbs that shares it.

*See* United States Brief as Respondent Supporting Petitioner, attached to the Goldstein Decl. Exhibit B, at 10. Moreover, at least thirteen amicus briefs have been filed in support of the more narrow interpretation of the ATDS definition.[6]

---

[5] The United States brought itself into the case as a party at the lower court level on the basis that Facebook had asserted an affirmative defense relating to the constitutionality of the TCPA and whether its limitations on certain speech violated the First Amendment. That issue was recently addressed by the Supreme Court by the related case of *Barr v. American Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020), and, therefore, the ATDS issue is the only issue before the Supreme Court.

[6] One such brief even argues text messages (like those at issue here) fall outside the TCPA's reach. *See* Brief of Washington Legal Foundation as *Amicus Curiae* in Support of Petitioner, attached to the Goldstein Decl. as Exhibit C, at 3 ("No normal person refers to text messages as calls; and no one suggests that Congress meant, when it passed the TCPA, for 'call' to mean 'call or text

6

If the Supreme Court adopts the narrow interpretation of an ATDS and finds that the equipment must employ a random or sequential number generator to constitute an ATDS, its ruling would overrule the Second Circuit's contrary opinion in *Duran* and extinguish Plaintiff's claims. Accordingly, for the reasons below, a stay of the case is warranted until the Supreme Court issues its ruling.

### III. A Stay is Warranted Here Pending the Decision in *Facebook, Inc. v. Duguid*.

Regardless of how the Supreme Court will rule in *Facebook*, the forthcoming decision squarely impacts the central issue in this case, will be binding, and will be dispositive to, or at least materially shape, the course of this litigation. A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This discretion is "incident to [a district court's] power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997); *see also Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (quotation marks omitted)).

In assessing whether to grant a stay, courts consider five factors: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Loftus v. Signpost Inc.*, No. 19-CV-7984, 2020 WL 2848231, at *2 (S.D.N.Y. June 2, 2020).

---

message.' The wide agreement that a text is a TCPA call has arisen, not from attentive analysis of the TCPA's words, but from overreliance on the statute's purpose and a game of follow the leader.").

District Courts frequently grant stays pending a decision by the Supreme Court or Circuit Courts of Appeal on crucial issues in cases before them, including on issues regarding interpretation of the TCPA. *See, e.g.*, *Campbell v. Synchrony Bank*, No. 1:17-CV-080, 2017 WL 11285843 (N.D.N.Y. Aug. 11, 2017) (granting motion to stay pending the D.C. Circuit's TCPA decision in *ACA International*); *Reynolds v. Time Warner Cable, Inc.*, No. 16-CV-6165, 2017 WL 362025, at *1 (W.D.N.Y. Jan. 25, 2017) (same); *DiMarco v. Nationstar Mortg., LLC*, No. 16-CV-6588, 2017 WL 1855197, at *1 (W.D.N.Y. May 5, 2017) (same); *Loftus*, 2020 WL 2848231, at *3 (granting stay pending the Supreme Court's decision on the constitutionality of the TCPA in *Barr v. Am. Assoc. Political Consultants*). Indeed, in *Loftus*, the court has since furthered the stay originally granted in a similar case in light of *Facebook*. *See* Memorandum Opinion and Order, *Loftus v. Signpost Inc.*, No. 19-CV-7984, Dkt. 53 (S.D.N.Y. October 19, 2020) (describing the forthcoming *Facebook* decision as "pivotal" because it "may shape the progress of discovery and the ultimate outcome in this case") (attached to Goldstein Decl. as Exhibit D.).

Other district courts agree that staying TCPA proceedings until the Supreme Court issues its decision in *Facebook* is the prudent course of action where, as here, *Facebook* might dispose of the claims. *See, e.g.*, *Creasy v. Charter Commc'ns, Inc.*, No. 20-1199, 2020 WL 5761117, at *7 (E.D. La. Sept. 28, 2020) (staying a TCPA case in light of *Facebook* because "such a decision would illuminate an unsettled area of the law that is key to this case, and because a stay will promote judicial economy, conserve party resources, and increase the likelihood of a just and correct outcome"); *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, No. 11-MD-02295, 2020 WL 5223545, at *1 (S.D. Cal. July 27, 2020) ("[T]he ruling in [*Facebook*] will simplify this matter in that it bears upon the main issue pending before this Court."); *Veytia v. Portfolio Recovery Assocs., LCC*, No. 20-CV-0341, 2020 WL 5257881, at *3 (S.D. Cal. Sept. 3,

2020) (explaining that awaiting a decision in *Facebook* will ensure any "fact and expert discovery and substantive briefing us[es] the proper definition of an ATDS"); *Aleisa v. Square, Inc.*, No. 20-CV-00806, 2020 WL 5993226, at *7–8 (N.D. Cal. Oct. 9, 2020) (granting motion to stay because a "key question of law in the instant case—what constitutes an ATDS" will be resolved by *Facebook* and awaiting that decision will avoid "engag[ing] in costly and time-consuming class action discovery and ongoing litigation, which could be wasted").

Similarly, here, the Supreme Court's decision will have a direct and potentially dispositive impact on the paramount issue in this case: whether the system allegedly used to send the texts at issue is, in fact, an ATDS under the TCPA. After the Supreme Court's decision, Plaintiff's TCPA claims will either be extinguished, or the ruling will simplify and narrow the issues in this case. Thus, the ruling will serve the private interests of both parties by allowing the parties to proceed expeditiously with the litigation. Given the degree of uncertainty on this issue, staying the case pending the Supreme Court's decision will promote judicial economy, and avoid hardship and prejudice to both parties. Indeed, a stay is especially warranted where, as here, a matter is in its early stages, very little substantive work has been done, and there are no immediately pressing deadlines or trial dates:

> [T]he early stage of this litigation weighs in favor of a stay. The case is still in the pleadings stage … [c]onsequently, very little substantive work has been done in this case, there are no immediately pressing deadlines or trial dates. In the absence of a stay, the parties will have to expend time and money conducting discovery on an issue central to Defendant's liability while lacking a clear idea of the law that will ultimately apply at summary judgment or at trial.

*See Aleisa*, 2020 WL 5993226, at *8 (internal quotes and citations omitted). Without a stay, the parties will be forced to complete expensive and time-consuming fact discovery and engage in expert discovery—primarily directed at whether the system at issue was in fact an ATDS—before the Supreme Court rules on the definition of that critical statutory term.

## **CONCLUSION**

WHEREFORE, Defendant respectfully requests that the Court grant its motion and stay the case pending the ruling by the Supreme Court in *Facebook*.

Dated: October 30, 2020                **MYPIZZA TECHNOLOGIES, INC.,**

By: */s/ Philip A. Goldstein*
Philip A. Goldstein
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020-1104
Telephone: 212-548-2100
Fax: (212) 548-2150
pagoldstein@mcguirewoods.com

Tammy L. Adkins (*pro hac vice*)
Susan E. Groh (*pro hac vice*)
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, Illinois 60602-2828
Telephone: 312-849-8100
Fax: 312-920-6193
tadkins@mcguirewoods.com
sgroh@mcguirewoods.com

*Counsel for Defendant MyPizza Technologies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2020, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Philip A. Goldstein*
Philip A. Goldstein
